C & L RURAL ELECTRIC COOPERA-
TIVE CORPORATION and Employers
Mutual Liability Insurance Company of
Wisconsin, Plaintiffs,

v.

AMERICAN CASUALTY COMPANY,
Defendant.

No. 3458.

United States District Court
E. D. Arkansas, W. D.

Nov. 20, 1961.

T. S. Lovett, Jr., Little Rock, Ark., for
C & L. J. W. Barron, Little Rock, Ark.,
for Employers Mutual.

Malcolm W. Gannaway, Little Rock,
Ark., for defendant.

HENLEY, District Judge.

This is an action for indemnity brought
against the surety on a contractor's bond.
The cause has been submitted upon a
stipulation of facts and written briefs.
Complete diversity of citizenship exists
between the parties, and the amount in
controversy is substantially in excess of
$10,000, exclusive of interest and costs.
The facts are as follows:

On or about February 20, 1947, plain-
tiff C & L Rural Electric Cooperative
Corporation (C & L) entered into a con-
tract with Robert Kincade and others do-
ing business as Delta Construction Co.
(Delta) for the erection of certain trans-
mission lines in Lincoln County, Arkan-
sas. The contract contained the following
provisions:

"Article IV

"Particular Undertakings of the
Contractor

Section 1.—*Protection to Persons
and Property.*

"The Contractor shall at all
times take all reasonable precautions
for the safety of employees on the
work and of the public, * * *

"The following provisions shall not
limit the generality of the above re-
quirements:

"(a) The Contractor shall at no
time and under no circumstances
cause or permit any employees of the
Contractor to perform any work up-
on energized lines, or upon poles
carrying energized lines. * * *

* * * * * *

"(g) The Project, from the com-
mencement of work to completion, or
to such earlier date or dates when the

Owner may take possession and control in whole or in part as hereinafter provided shall be under the charge and control of the Contractor and during such period of control by the Contractor all risks in connection with the construction of the Project and the materials to be used herein shall be borne by the Contractor. The Contractor shall make good and fully repair all injuries and damages to the Project or any portion thereof under the control of the Contractor by reason of any act of God or other casualty or cause whether or not the same shall have occurred by reason of the Contractor's negligence. The Contractor shall hold the Owner harmless from any and all claims for injuries to persons or for damage to property happening by reason of any negligence on the part of the Contractor or any of the Contractor's agents or employees during the control by the Contractor of the Project or any part thereof."

To secure the performance of the contract Delta entered into a bond for the benefit of C & L, and defendant executed said bond as a compensated surety. The bond in the penal sum of $243,253.65 contained a number of conditions, including the following:

"The condition of this obligation is such that if the Principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of the Construction Contract * * * and shall fully indemnify and save harmless the Owner and the Government from all costs and damages which they, or either of them, shall suffer or incur by reason of any failure so to do, and shall fully reimburse and repay the Owner and the Government for all outlay and expense which they, or either of them shall incur in making good any such failure of performance on the part of the Principal, * * * then this obligation shall be null and void, but otherwise shall remain in full force and effect."

Subsequently, Delta entered upon the performance of the contract, and in the course of the work an employee of Delta, one McEntire, sustained serious personal injuries. On or about February 9, 1948, McEntire filed suit against C & L and others in the Circuit Court of Lincoln County, Arkansas, and recovered a judgment for $40,000.[1] The defendants appealed, and on December 19, 1949, the judgment was affirmed by the Supreme Court of Arkansas. Rehearing was denied on February 6, 1950. C. & L. Rural Electric Cooperative Corporation v. McEntire, 216 Ark. 276, 225 S.W.2d 941.

At the time of McEntire's injury C & L had in force a policy of public liability insurance issued by plaintiff Employers Mutual Liability Insurance Company of Wisconsin, which policy had an applicable limit of $25,000. On February 13, 1950, the McEntire judgment was paid. In discharging said judgment Employers Mutual paid its policy limit of $25,000, defendants other than C & L paid $5,000, and C & L paid the balance amounting to $10,742.99.

The policy issued by Employers Mutual contained a standard subrogation agreement, and after the McEntire judgment had been paid C & L and Employers Mutual filed a suit for indemnity against Delta in the Lincoln County Circuit Court. While the defendant in the instant case was not made a party to that suit, it was notified of its pendency and was kept constantly advised as to its progress.

Delta demurred to the complaint filed against it by C & L and Employers Mutual, and the demurrer was sustained by the trial court. The Supreme Court of Arkansas reversed on January 12, 1953, and denied rehearing on April 20 of that year. C. & L. Rural Electric Cooperative Corporation v. Kincaid, 221 Ark. 450, 256 S.W.2d 337. It was held by the Supreme

---

[1]. McEntire had received workmen's compensation from Delta, and Delta was not named as a party defendant in McEntire's suit.

Court that Delta was required under its contract to provide indemnity on account of the McEntire judgment, but that the amount recoverable by C & L and Employers Mutual would have to be diminished in proportion to any negligence of which C & L might have been guilty which proximately contributed to the McEntire injury. The cause was remanded to the Circuit Court of Lincoln County for trial on the merits.

The case against Delta was tried in February 1956, and the jury found that McEntire's injuries were proximately caused by the concurrent negligence of Delta and C & L and that the fault should be apportioned 60 percent to Delta and 40 percent to C & L. Judgment was entered on the jury verdict, and the Supreme Court of Arkansas affirmed, except that it modified the judgment so as to allow interest to the appellees. Kincade v. C. & L. Rural Electric Coop. Corp., 227 Ark. 321, 299 S.W.2d 67. The opinion of the Supreme Court was rendered on February 11, 1957, and rehearing was denied on March 18, 1957.

As finally determined the amount of C & L's judgment against Delta was $8,879.63, together with costs and interest from May 11, 1957, and the amount of Employers Mutual's judgment was $22,198.08, plus costs and interest from May 11, 1957. No part of those sums has been paid by Delta. After the entry of the judgment against Delta plaintiffs made demand upon American Casualty for payment, and said demand having been refused, this action was commenced on October 16, 1957, in the Circuit Court of Pulaski County, and was duly removed to this Court.[2] It will be noted that while this action was commenced only a few months after the liability of Delta to plaintiffs had been finally fixed and measured, it was not commenced until more than seven years after the original McEntire judgment against C & L had been satisfied.

It is the theory of the plaintiffs that the defendant, American Casualty Co., as surety on Delta's performance bond, is liable to indemnify plaintiffs to the extent of 60 percent of the McEntire judgment and is also liable for a statutory penalty and attorney's fee. It is the further theory of the plaintiffs that, since the liability of Delta under its indemnity agreement did not become fixed and liquidated until final disposition of the suit against Delta, plaintiffs' cause of action against defendant did not accrue until May 1957.

In its answer defendant tenders a number of defenses, including the plea that the action is barred by the Arkansas five year statute of limitations, Ark.Stats., 1947, § 37–209, which provides that all actions on promissory notes and other instruments in writing, not under seal, shall be commenced within five years after the cause of action shall accrue, and not thereafter. Since the Court is of the opinion that the plea of limitations is well founded, it is unnecessary to mention or discuss the other contentions advanced by defendant.

■ It is a well settled principle that a cause of action for indemnity under a contract such as Delta's accrues when the obligee suffers actual damage, including financial loss occasioned by the payment of money. 27 Am.Jur. Indemnity, §§ 20, 21, and 24; 42 C.J.S. Indemnity § 14(c), pp. 589–591; Carter v. Adamson, 21 Ark. 287.

■ It is also well established that ordinarily an obligee's cause of action against his obligor's surety accrues at the same time as does the cause of action against the principal obligor, and that it is not necessary for the principal's obligation to be settled or determined before the obligee can proceed against the surety. See in this connection: 50 Am.Jur. Suretyship, §§ 79, 183–184; 72 C.J.S. Principal and Surety §§ 251, 252, 263.

---

**2.** Delta was or is a Mississippi concern, and in 1958 plaintiffs here commenced a suit on their judgment against Delta in the federal court in Mississippi. Plaintiffs obtained a default judgment in that suit, but have not collected anything on said judgment.

In German Insurance Co. v. Smead, Ark., 13 S.W. 332, the facts were that one Harper gave a bond to the insurance company conditioned that he would faithfully account to the latter for all moneys and properties coming into his hands as the company's agent. Smead and McKemie were sureties on the bond. Harper absconded, and suit was filed against the sureties alone, the contention being that Harper had failed to account for certain moneys that he had collected. The sureties answered the complaint with a general denial. The trial court, over objection, instructed the jury that its verdict must be for the defendants unless it was found "that there has been ascertained balance due from Harper to the plaintiff, of which Harper had notice before the institution of this suit." The jury found for the defendants. The Supreme Court of Arkansas reversed. In a per curiam opinion it was said, "The fourth instruction given at the instance of the defendants * * * is clearly erroneous." The headnote to the opinion is as follows:

"In an action against the sureties on a bond conditioned that the principal shall promptly account for, and pay over and apply, all sums of money received for plaintiff, plaintiff need not show that before bringing suit there had been a settlement of accounts between it and the principal, and the balance due plaintiff ascertained."

In 50 Am.Jur. Suretyship, § 175, p. 1018, it is said that where "by the terms of the contract, the obligation of the surety is the same as that of the principal, then as soon as the principal is in default, the surety is likewise in default, and may be sued immediately and before any proceedings are had against the principal." The same work states that a cause of action on a bond accrues immediately on the breach of any of its conditions, and that the liability of a surety, as a general rule, accrues at the same time as that of the principal. (50 Am.Jur. Suretyship, § 183, p. 1023.) And in the next section (§ 184) it is said that the statute of limitations begins to run in favor of a surety from the time that he is subject to suit.

Applying the foregoing principles the Court is convinced that plaintiffs' cause of action against both Delta and the defendant accrued not later than February 1950 when plaintiffs discharged the McEntire judgment, and that from that time forward they were entitled to bring suit to enforce that cause of action and to obtain a judicial determination of the existence and extent of the obligation of Delta and of defendant to indemnify plaintiffs. And from that time the statute of limitations began to run in favor of both Delta and the defendant.

The argument of plaintiffs that their cause of action against defendant did not accrue until their claim for indemnity from Delta had been definitely established and liquidated by reduction to judgment cannot be sustained. The liability of defendant on its bond was not limited to claims against Delta that had been liquidated or reduced to judgment. Said liability was co-extensive with that of Delta.

Of course, neither Delta nor defendant could be compelled to expend any money by way of indemnity until the lawsuit against Delta in the Circuit Court of Lincoln County had been disposed of. That consideration related simply to the merits of plaintiffs' claims and to the amount of their recovery. It had nothing to do with the accrual of plaintiffs' cause of action. Any obligee suing on a bond may be confronted with a meritorious defense or find himself unable to recover the full amount sued for. The obligation to indemnify, if any, and the extent of that obligation were fixed when the McEntire judgment was discharged, although the existence and extent of such obligation had to be determined in the course of the State court proceeding, and when there was such a determination it was retroactive in effect and related back to the accrual of the cause of action. That principle was expressly recognized as against Delta when the Supreme Court of Arkansas in the last phase of the State court litigation involving that company allowed plaintiffs interest on the amount of their

recovery from the date upon which the McEntire judgment was discharged. Kincade v. C. & L. Rural Electric Coop. Corp., 227 Ark. 321, 330–331, 299 S.W. 2d 67.

Since plaintiffs did not commence their action against the surety until after a lapse of more than seven years after the accrual of their cause of action, their claim is barred by limitations, and their complaint will be dismissed.